**In the Matter of MONARCH TILE, INC., EIN: 75–1175013, Debtor(s).**

**David MICHAEL, d/b/a North Alabama Paving, Plaintiff(s),**

**v.**

**MONARCH TILE, INC. and Department of Transportation, of The State of Alabama, Defendant(s).**

**Bankruptcy No. 97–84828–JAC–11.**
**Adversary No. 97–80397–JAC–11.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

Feb. 12, 1998.

Michael Ford, Tuscumbia, AL, for Plaintiffs.

James White, Birmingham, AL, for Defendants.

## ORDER

JACK CADDELL, Bankruptcy Judge.

This cause came on to be heard on cross motions filed by the parties for summary judgment. The hearing in this matter was held on the 11th day of February 1998. After consideration of the pleadings and arguments of counsel, the Court believes that summary judgment is due to be entered in favor of the defendants, Monarch Tile ("Monarch") and the Alabama Department of Transportation (the "Department"), pursuant to Bankruptcy Rule 7056, upon finding that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law.

In May of 1994, the Department issued a permit to Monarch authorizing the company to construct a turnout lane along Alabama Highway 17 in Lauderdale County to provide access from the state highway to Monarch's plant. Under the terms of the permit, Monarch was required to file either a bond or certified check with the Department as follows:

> 10. The APPLICANT will file with the Alabama Department of Transportation an acceptable *certified check or bond* in the penal amount of $10,000.00 to guarantee the faithful *performance* of this permit in its entirety. Upon satisfactory completion and acceptance of all the work provided for in this permit contract, the check or bond, as applicable, will be returned to the APPLICANT; otherwise, the proceeds from the check, or any amount received by the STATE as a result of the bond, will be applied to complete and fulfill the permit contract terms.

(Emphasis added).

Monarch filed a $10,000.00 cash bond with the Department in compliance with this paragraph and employed plaintiff, David Michael d/b/a North Alabama Paving ("Michael"), to construct the turnout lane for $8,635.00. Michael concluded construction of the turnout lane in November of 1997 and issued an invoice to Monarch for the contract price. On December 16, 1997, Monarch filed for relief under chapter 11 of the Bankruptcy Code.

Michael argues that Monarch's compliance with the permit is solely a result of plaintiff's efforts and expenditures and seeks judgment requiring the Department to disburse $8,635.00 from the bond to plaintiff with the remainder of the bond to Monarch. Plaintiff cites the "little Miller Act," ALA.CODE § 39–1–1 (1975), as authority for its suit upon the bond. Section 39–1–1 provides in part as follows:

> (a) Any person, firm, or corporation entering into a contract with the state or any county or municipal corporation or subdivision thereof in this state for the repair, construction, or prosecution of any public buildings or public work, highways, or bridges shall, before commencing the work, execute a *performance bond,* with penalty equal to 100 percent of the amount of the contract price. In addition, another bond, payable to the state, county, or municipal corporation or subdivision letting the contract, shall be executed in an amount not less than 50 percent of the contract price, with the obligation that the contractor or contractors shall promptly make payments to all persons supplying labor, materials, or supplies for or in the prosecution of the work provided in the contract and for the payment of reasonable attorneys' fees incurred by successful claimants or plaintiffs in civil actions on the bond.

> (b) Any person, firm or corporation that has furnished labor, material or supplies for or in the prosecution or repair of any public building or public work, highways, or bridges and payment has not been made may institute a civil action upon the bond and have their rights and claims adjudicated in a civil action and judgment entered thereon. . . .

> Every person or persons **having a right of action on the last described bond** as provided in this section shall, upon written application to the authority under the direction of whom the work has been prosecuted, indicating what labor, material, foodstuffs, or supplies for the work that have been supplied and that payment has not been made, will be promptly furnished

a certified copy of the additional bond and contract.

(c) This section shall not require the taking of a bond to secure contracts in an amount less than twenty thousand dollars ($20,000).

(Emphasis added).

Monarch argues that Alabama's Miller Act is inapplicable to the bond held by the Department because the act applies to public works contracts with the state and not permits issued by the state. Additionally, Monarch argues that the cash bond posted by debtor is a performance bond as opposed to a payment bond and that the performance bond was issued for the benefit of the state to insure the completion of the project, not the payment of contractors or subcontractors.

In the case of *National Am. Ins. Co. v. Boh Brothers Constr. Co.*, 700 So.2d 1363 (Ala.1997), the Alabama Supreme Court described the difference between performance and payment bonds under § 39–1–1(a) as follows:

> The performance (bond) done by Boh and its surety, F & D was to complete the construction contract between Boh and the Department. The payment bond required Boh, and F & D to pay all those third parties who supplied labor, materials, services, or equipment for the project....

*Id.* at 1366. *See also* BLACK'S LAW DICTIONARY, 1998 WL (defining a performance bond as a "surety bond which guarantees that contractor will fully perform contract and guarantees against breach of contract"); *Travelers Indem. Co. v. Capitol City Haulers, Inc.*, 393 So.2d 1012, 1013 (Ala.Civ.App.1980)(describing a payment bond as a bond "posted to secure payment for those who furnished materials, supplies or services for the prosecution of the bonded work").

█ Under these definitions, the Court finds that the cash bond posted by Monarch was a performance bond. Paragraph 10 of the subject permit clearly states that the posting of the bond or certified check was "to guarantee the faithful **performance** of this permit in its entirety." It, thus, appears that

the $10,000.00 bond posted by Monarch was a performance bond for the benefit of the Department to insure construction of the turnout lane and not a payment bond for the benefit of entities such as Michael furnishing labor or materials for public works.

Michael relies upon the case of *A.G. Gaston Constr. Co. v. Hicks*, 674 So.2d 545 (Ala.Civ.App.1995) in support of his argument that § 39–1–1 applies to this case. However, the court in *Gaston* addressed the elements required to be "shown before a supplier is entitled to recover under a Miller Act payment bond," not a performance bond like that before the Court. *Id.* at 547.

█ Alternatively, Michael asks the Court to use its 11 U.S.C. § 105 equitable powers to prefer his claim above other unsecured creditors. Although the Court sympathizes with the unfortunate situation in which this creditor finds himself, § 105 "does not give a bankruptcy judge a right to do equity without limits." *See Carter v. Peoples Bank & Trust Co. (In re BNW, Inc.)*, 201 B.R. 838 (Bankr.S.D.Ala.1996)(narrowly construing a bankruptcy court's § 105 powers).

Based upon the forgoing it is ORDERED, ADJUDGED AND DECREED that:

1. Judgment be and hereby is entered in favor of the defendants, Monarch Tile, Inc. and the Department of Transportation of the State of Alabama, and against the plaintiff, David Michael d/b/a North Alabama Paving.

2. The performance bond in the amount of $10,000.00 held by the Department is property of the debtor's bankruptcy estate and is due to paid to Monarch.